UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JALEEZA D. PARHAM,

                                  No. 14-14225

      Plaintiff,                District Judge George Caram Steeh

v.                                     Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Jaleeza D. Parham ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Supplemental Security Income ("SSI") under the Social Security Act. The parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #16] and that Plaintiff's Motion for Summary Judgment be DENIED [Docket #15].

**I.   PROCEDURAL HISTORY**

Plaintiff applied for SSI on May 11, 2012 alleging disability as of January 1, 2010 (Tr. 122). After the initial denial of the claim, Plaintiff requested an administrative hearing,

held on May 16, 2013 in Mount Pleasant, Michigan before Administrative Law Judge ("ALJ") Kevin J. Detherage (Tr. 25). Plaintiff, represented by attorney Matthew Taylor testified, (Tr. 29-60), as did vocational expert ("VE") Michelle Ross (Tr. 61-65). On July 11, 2013, ALJ Detherage found Plaintiff not disabled (Tr. 20-21).

On September 26, 2014, the Appeals Council declined to review the administrative decision (Tr. 1-3). Plaintiff filed suit in this Court on November 3, 2014.

## II. BACKGROUND FACTS

Plaintiff, born December 5, 1993, was 19 at the time of the administrative decision (Tr. 21, 122). She completed high school (Tr. 138) and previously worked for a "sheltered workshop" (Tr. 137). She alleges disability due to depression (Tr. 137).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

She lived by herself in an apartment (Tr. 30). She last worked for pay in August, 2012 and previously worked for two years as an assembler (Tr. 31-33). She was unable to work due to mood swings resulting from depression and bipolar disorder (Tr. 34). She got along with her mother and two brothers but did not get along with her older sister (Tr. 35). She currently took Vistaril, which helped reduce mood swings (Tr. 35-36). She was seeing a social worker once a month (Tr. 37). She also experienced asthma and required the use of an inhaler but did not experience other significant physical problems (Tr. 38).

Plaintiff was suspended multiple times in high school for fighting (Tr. 36). She had

been admitted for inpatient hospitalization for one week in 2009 after writing a letter stating that she wanted to kill her mother and herself (Tr. 41). The same year, she had attempted suicide on another occasion (Tr. 41). At present, she was able to shop, perform household chores, and pay bills independently (Tr. 43). She had been arrested for CCW, felonious assault, and retail fraud but had not been on probation since December, 2012 (Tr. 44). She attended college for two week before dropping out due to conflicts with her mother (Tr. 44-45). She was interested in photography and construction work but had not taken pictures since her camera broke (Tr. 45). She had unsuccessfully applied for work at Walmart, Meijer, and Kroger (Tr. 46). If offered a job, she preferred the work of a janitor because she would not be required to interact with other people (Tr. 47). At present, she did not experience depression but had memory problems (Tr. 48). She did not experience problems reading, writing, or ciphering, but experienced problems maintaining attention and concentration; understanding information; and making decisions (Tr. 49-50).

In response to questioning by her attorney, Plaintiff reported that she currently took Paxil and had recently ceased taking Vistaril and Remeron because they were not effective (Tr. 51-52). She testified that while holding a job, she often missed work because she did not want to interact with other people (Tr. 52). She reported a history of yelling at others and "sometimes" becoming physical (Tr. 53). She formerly cut her wrists but did not at present (Tr. 54). She stated that she experienced suicidal ideation after being alone for long periods (Tr. 54). She reported that her mother helped her shop for groceries (Tr. 55). She alleged

symptoms of depression such as mood swings, appetite changes, and lack of motivation up to six days a month, (Tr. 56). Plaintiff reported that the symptoms of depression had lessened due to counseling (Tr. 59-60).

### B. Medical Records

#### 1. Treating Records

In February, 2011, Plaintiff was diagnosed with adjustment and conduct disorders after a charge of felonious assault for threatening her brother with a knife (Tr. 238). April, 2011 medication review notes state that Plaintiff had a current GAF of 45[1] due to depressive and conduct disorders (Tr. 217). She denied suicidal or homicidal ideation (Tr. 218). Counseling notes state that Plaintiff was encouraged to pursue employment opportunities (Tr. 219). Treating records from the following month note a GAF of 62[2] (Tr. 220). June, 2011 notes state that she was fully oriented with adequate judgment and insight (Tr. 221). October, 2011 intake records state that Plaintiff was currently on probation for retail fraud (Tr. 203). Plaintiff reported difficulty obtaining employment and due to "transportation issues," had to withdraw from college classes (Tr. 203). She lived intermittently with "extended family, boyfriend, or friends" (Tr. 203). Treating records note a suicide attempt

---

[1]A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *American Psychiatric Association, Diagnostic and Statistical Manual Mental of Mental Disorders* ("*DSM–IV*"), 34. (4th ed.2000).

[2]GAF scores in the range of 61-70 suggest "some mild symptoms or some difficulty in social, occupational, or school functioning." *DSM–IV–TR* at 34.

at the age of 13 and "a history of cutting," but "no current concerns" (Tr. 204). She appeared cooperative with a normal mood and fair impulse control (Tr. 207). Plaintiff denied substance abuse (Tr. 208). She was assigned a GAF of 55[3] (Tr. 210).

March, 2012 records state that Plaintiff reported symptoms of depression after going off Prozac for almost two months (Tr. 226). In May, 2012, psychiatrist C.A.N. Rao, M.D. examined Plaintiff, noting that she was "friendly," talkative," and "free of any suicidal ideation symptoms of depression, mood swings, or impulsive behavior" (Tr. 260). She found that her thought process was "logical, relevant, and goal oriented" (Tr. 260). She found that she was "doing well" (Tr. 261). June, 2012 psychological treating records state that Plaintiff was a "no show" for three of eleven scheduled appointments between April and June, 2012 (Tr. 248).

Dr. Rao's September, 2012 treatment records state that since the May, 2012 examination, Plaintiff had been jailed and was later on probation (Tr. 268). She noted that she was "up tight and anxious" but had a normal thought process and no mood swings (Tr. 268). The following month, Plaintiff reported that she had dropped out of college due to mental illness (Tr. 277). She reported that her mother had advised her to go to college and get a job (Tr. 277). The records show current substance abuse with "low impulse control and poor judgment at times" (Tr. 277). She reported that she did "chores and laundry" in

---

[3]A GAF score of 51-60 indicates moderate symptoms OR moderate difficulty in social, occupational, or school functioning. *DSM–IV* at 34.

exchange for a place to sleep at various friend's houses (Tr. 278). The treating notes state that "if approved for SSI," Plaintiff would require a representative payee "due to substance abuse and low impulse control" (Tr. 278). Treating notes also state that Plaintiff required prompting to perform personal care tasks (Tr. 282). However, notes from the following week state that she had "good rapport" with her treatment team (Tr. 293). She admitted to weekly marijuana use and daily alcohol use (Tr. 294). Dr. Rao's medication review notes from later the same month state that Plaintiff was still living with friends (Tr. 305). Plaintiff expressed concern regarding her financial problems (Tr. 305). Dr. Rao's notes from the following month state that Plaintiff denied mood swings and that the psychotropic medications were helpful (Tr. 306). Her notes from the next month state that Plaintiff, now living with her cousin, was "friendly and talkative" (Tr. 314). She denied recent drug or alcohol abuse (Tr. 314).

In April, 2013, Dr. Rao completed an assessment of Plaintiff's work-related activities, finding that she was moderately limited in the ability remember locations and procedures and markedly limited in the ability to understand "short and simple" or detailed instructions; work within a schedule or without supervision; work without psychologically based interruptions; and work with peers without "behavioral extremes" (Tr. 315).

### 2. Non-Treating Records

In September, 2012 psychologist Dr. Judy Strait performed a non-examining assessment of the treating records on behalf of the SSA, finding that Plaintiff experienced

moderate limitation in social functioning and concentration, persistence, or pace (Tr. 70). She found that Plaintiff experienced moderate limitation remembering detailed instructions, working with others, maintaining attention for extended periods, interacting with the public, and adapting to workplace changes (Tr. 72-73). She found that Plaintiff retained "the capacity to perform routine, 2-step tasks on a sustained basis (Tr. 74).

### C. Vocational Testimony

The ALJ posed the following question to the VE, taking into account Plaintiff's age, education, and work experience:

> [A]ssume that the hypothetical individual has a residual functional capacity to do work at all exertional levels, work which is limited to simple, routine tasks in a work environment free of fast-paced production requirements involving only simple work-related decisions and routine workplace changes, should avoid concentrated exposure to dust, fumes, gases, odors, or poorly ventilated area, and the hypothetical individual is likely to be off task eight percent of the work period. Can the hypothetical individual perform any work . . . ? (Tr. 61).

The VE responded that given the hypothetical limitations, the individual could perform the unskilled, exertionally medium[4] work of a machine feeder (15,500 positions in the state economy); cleaner (25,600); and packager (7,200) (Tr. 61-62). The VE testified that

---

[4] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

if the hypothetical individual were further limited by the need for "close supervision" entailing "having a supervisor check the person's . . . work four times per day," the job numbers would remain unchanged (Tr. 62). He testified further that if the same individual were off task 20 percent of the work period, all work would be precluded (Tr. 63). He stated that his testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 63).

In response to questioning by Plaintiff's attorney, the VE stated that if "memory and focus problems" rendered the individual "unable to remember and follow and complete even simple and short instructions with special supervision at least once or twice an hour," or, the individual missed work about once a week, all work would be precluded (Tr. 63-64). The VE testified that the inability to work "in coordination . . . or in close proximity to other individuals" for prolonged periods would impact the packager position, but would not change the job numbers for machine feeder or cleaner (Tr. 65).

**D. The ALJ's Decision**

Citing the medical and therapy records, ALJ Detherage found that Plaintiff experienced the severe impairments of asthma, depression, conduct disorder, adjustment disorder, borderline personality disorder, and drug and alcohol abuse disorder but that the conditions did not meet or equal a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14). The ALJ found that Plaintiff experienced mild limitation in activities of activities of daily and social functioning, and moderate limitation in concentration,

persistence, or pace (Tr. 15).  The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to work at all exertional levels with the following additional restrictions:

> [S]imple, routine tasks in a work environment free of fast-paced production requirements involving only simple work-related decisions and routine workplace changes; she should avoid concentrated exposure to dust, fumes, gases, odors, or poorly ventilated area, and she is likely to be off task eight percent of the work period (Tr. 16).

Citing the VE's testimony, the ALJ determined that while Plaintiff did not have past relevant work, she could work as a machine feeder, cleaner, and packager (Tr. 20).

The ALJ discounted Plaintiff's allegations, noting that while she claimed disability resulting from mood swings, she denied mood swings to Dr. Rao on multiple occasions (Tr. 18).  The ALJ cited treating records indicating that Plaintiff quit attending classes due to transportation and financial problems, which contradicted the claim that she quit college courses due to mental health problems (Tr. 18).  He observed that Plaintiff admitted to performing "chores and laundry" in exchange for board at her friends' homes (Tr. 18).  The ALJ noted that while Plaintiff denied substance abuse to Dr. Rao in 2012, earlier records showed a history drug and alcohol abuse (Tr. 18).

### III.   STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she

can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

### A. Dr. Rao's Treating Opinion

Plaintiff argues that the ALJ erred in rejecting Dr. Rao's April, 2013 finding of numerous marked work-related limitations. *Plaintiff's Brief,* 8-13, *Docket #15*. She argues that Dr. Rao's opinion mandates a finding of disability. *Id.* (*citing* Tr. 315-317).

#### 1. Applicable Law

"If the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir.2009)(internal quotation marks omitted)(citing *Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir.2004); 20 C.F.R. § 404.1527(c)(2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392 (6th Cir.2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2)). In explaining the reasons for giving less than controlling weight

to the treating physician opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544.

The failure to articulate "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. CSS*, 710 F.3d 365, 376 (6th Cir.2013); *Wilson,* 378 F.3d at 544–546 (6th Cir.2004)(citing § 404.1527(c)(2)). "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir.2011). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart*, at 376 (citing SSR 96–2p, 1996 WL 374188, *5 (1996)).

**2. The ALJ Did Not Err in According "Little Weight" to Dr. Rao's Opinion**

In support of his rejection of Dr. Rao's opinion, the ALJ noted that the finding of marked work-related limitations was not consistent with the physician's own treating records (Tr. 18). The ALJ cited Dr. Rao's own May, 2012 initial finding that Plaintiff experienced moderate psychological limitation (Tr. 18-19). He noted that Dr. Rao's records did "not contain any objective findings that would support . . . marked functional limitations" (Tr. 19).

While Plaintiff argues presently that her condition deteriorated between Dr. Rao's

initial evaluation and the April, 2013 assessment, the ALJ cited Dr. Rao's February, 2013 observation that Plaintiff was "friendly and talkative" (Tr. 16). The ALJ also cited Dr. Rao's September and November 2012 notes stating that Plaintiff denied mood swings, had a logical thought process, and reported good results from her current medication (Tr. 16). The ALJ reasonably concluded that Dr. Strait's non-examining finding that Plaintiff retained the ability to perform simple, routine work, accurately reflected the treating records[5] (Tr. 18). For overlapping reasons, Plaintiff's argument that Dr. Strait's September, 2012 assessment should not be credited did not have benefit of records created between that month and the July, 2013 administrative opinion is without merit. Plaintiff's claim that her own condition declined after September, 2012 is contradicted by records showing that she had a "good rapport" with her treatment team (Tr. 293), denied mood swings, and was "friendly and talkative" (Tr. 314). The ALJ's finding that Dr. Rao's April, 2013 assessment was not consistent with her treating notes of the past 12 months is supported by substantial evidence and as such, should not be disturbed.

### B. Plaintiff's Additional Arguments For Remand

Plaintiff contends that her allegations of psychological impairments are also supported

---

[5] Plaintiff notes that the ALJ deviated from Dr. Strait's findings in one respect by finding mild rather than moderate limitation in social functioning. *Plaintiff's Brief* at 15 (citing Tr. 15, 73). However, the ALJ supported the finding of mild limitation with April, 2012 treating records stating that she "engage[d] well with others," was "friendly and talkative," and did not experience interpersonal difficulties in the course of casual interaction such as shopping for groceries (Tr. 15).

by the findings of her mental health treatment case manager Kathryn MacKinnon. *Plaintiff's Brief* at 13-16. She cites Ms. MacKinnon's August, 2012 finding that Plaintiff was "unable to be around other people due to social anxiety; severe mood swings;" verbal and physical aggression; agitation; and "poor stress management skills" (Tr. 143). Plaintiff concedes that because Ms. MacKinnon is not a treating physician or psychologist, her opinion is not entitled to controlling weight, but notes that her opinion is entitled to consideration. Nonetheless, she contends that the opinion is consistent with Dr. Rao's finding of marked work-related limitations.

As Plaintiff acknowledges, Ms. MacKinnon is not an "acceptable medical source," and thus not entitled to controlling weight. 20 C.F.R. §§ 404.1502, 404.1513(a). Nonetheless, her opinion "is entitled to consideration due to [her] expertise and long-term relationship" with Plaintiff. *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); 20 C.F.R. § 404.1513(d)(1). In weighing the opinions of "other sources," it is "appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06–3p, 2006 WL 2329939, *2 (August 9, 2006). The Ruling notes the increasing significance of "other" medical sources in the disability determination:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not

> technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

*Id.* at *4. The Ruling states further, "The evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case." *Id.* at *5.

Nonetheless, the ALJ's rejection of Ms. MacKinnon's opinion does not provide grounds for remand. The ALJ acknowledged that the case manager's opinion was entitled to consideration under SSR 06-3p, but that her findings of disabling concentrational problems, mood swings, and physical and verbal aggression were undermined by Plaintiff's testimony that she was able to read "as long as she [was] able to read it over a couple of times," and the treating notes (discussed above) showing that Plaintiff's psychological problems were not disabling (Tr. 19).

The ALJ's conclusions regarding Ms. MacKinnon's opinion are also supported by Plaintiff's testimony that she was able to shop, perform household chores, and pay bills independently (Tr. 43). Notably, Plaintiff admitted that after the alleged onset of disability, she had applied for work a several local supermarkets (Tr. 46). Contrary to Ms MacKinnon's August, 2012 opinion, Plaintiff denied problems reading, writing, or doing calculations and denied current symptoms of depression (Tr. 48-50). In response to questioning by her attorney, she acknowledged that her symptoms of depression lessened with counseling (Tr.

-15-

59-60). As the ALJ noted, Plaintiff's testimony that she was disabled as a result of mood swings is contradicted by multiple denials of mood swings in the treating records (Tr. 18). The ALJ noted that while Plaintiff claimed that dropped out of college due to mental illness, she stated on other occasions that she dropped out because she was unable to obtain transportation (Tr. 18). The ALJ noted further that Plaintiff's claims of physical limitation were undermined by her ability to perform household and laundry chores in exchange for room and board (Tr. 18).

While Plaintiff experiences some degree of limitation resulting from psychological problems, the ALJ's determination that she was capable of performing a significant range of unskilled work was easily within the "zone of choice" accorded to the fact-finder at the administrative hearing level. As such, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## VI.   CONCLUSION

I recommend that Defendant's Motion for Summary Judgment [Dock. #16] be GRANTED and that Plaintiff's Motion for Summary Judgment [Dock. #15] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th

Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                                s/R. Steven Whalen
                                                                 R. STEVEN WHALEN
                                                                 UNITED STATES MAGISTRATE JUDGE

Dated: December 9, 2015

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was sent to parties of record on December 9, 2015, electronically and/or by U.S. mail.

                                                                 s/Carolyn M. Ciesla
                                                                 Case Manager